**Konrad L. Trope** (California SBN: 133214)
TROPE AND TROPE LAW GROUP
5737 Kanan Rd., #585
Agoura Hills, CA 91301
Phone: (818) 575-7423
Email: ktrope@tropeandtropelawgroup.com

Attorneys for Plaintiff, Pontic Technology, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

Pontic Technologies, LLC, a Wyoming Limited Liability Company,

Plaintiff,

vs.

KYRIACOS TSIRCOU, a resident of the State of Arizona; TSIRCOU LAW, PC, a California professional corporation, Tsircou Intellectual Property Law; MARIKA TSIRCOU, a resident of the State of Arizona; and DOES 1 through 10, inclusive,

Defendants.

Case No: _____

**COMPLAINT FOR:**
(1) Breach of Written Contract;
(2) Breach of Oral Contract;
(3) Violations of the Racketeering Influence and Corrupt Organizations Act ("RICO") 18 U.S.C. § § 1961 *et seq*. (wire fraud);
(4) Violations of the Racketeering Influence and Corrupt Organizations Act ("RICO") 18 U.S.C. § § 1961 *et seq*. (conversion);
(5) Intentional Misrepresentation (Fraud)
(6) Negligent Misrepresentation
(7) Conversion
(8) Voidable Transaction – California Civil Code Section 3439.04(a)(1)
(9) Voidable Transaction – California Civil Code Section 3439.04(a)(2)
(10) Voidable Transaction – California Civil Code Section 3439.05
(11) Unjust Enrichment

**JURY DEMAND**

**COMES NOW**, Plaintiff Pontic Technologies, LLC, a Wyoming Limited Liability Company, presenting its complaint for various claims for relief as follows:

## THE PARTIES

1. Plaintiff Pontic Technologies, LLC, a Wyoming Limited Liability Company with a business address of 905 Blue Heron, Seal Beach, California 90740.

2. Defendant, Kyriacos Tsircou, is a resident of the State of Arizona. Defendant Tsircou is an attorney licensed by the State of California, holding State Bar license No. 209905.

3. Defendant Tsircou Law, is a California professional corporation, doing business as Tsircou Intellectual Property Law, a Professional Corporation (TIPL) with California Corporation #2957343.

4. Plaintiff is informed and believes and based upon such information and belief alleges that Defendant Marika Tsircou, a resident of the State of Arizona and is the wife of Defendant Kyriacos Tsircou. Furthermore, Plaintiff is informed and believes and thereon alleges that Defendant Marika Tsircou is involved in the acts complained of herein.

5. The true names and capacities of the Defendants sued in this Complaint as DOES 1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to set forth the true names and capacities of DOES 1 through 10, inclusive, when they have been ascertained or at the time of trial herein. Plaintiff is informed and believes and based thereon alleges that each of these fictitiously named Defendants participated in some manner in the events and occurrences referred to hereinafter and/or proximately caused the damages complained of herein.

6. Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, each of the Defendants (including *inter alia*, the fictitiously named Defendants) was the agent, servant, employee or co-conspirator of each of

RICO COMPLAINT

the other Defendants, and doing the things herein alleged, was acting in the scope of his, her, or its actual, apparent or special authority as such agent, servant, employee or co-conspirator, and with the permission or consent of each such co-Defendant.

7.      Plaintiff is further informed and believes, and upon such information and belief alleges that each of the Defendants including DOES 1-10, inclusive, were at all times herein mentioned acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

8.      At all times mentioned herein, Defendants and each of them, were an owner, co-owner, agent, representative, partner and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining Defendant, and in doing the things herein after alleged, were acting within the course and scope of their authorities as an owner, co-owner, co-owner, agent, representative, partner and/or alter ego of its co-defendants, with the full knowledge, permission and consent of each and every remaining Defendant, each co-defendant having ratified and approved the acts of the other co-defendants.

9.      Wherever appearing in this Complaint each and every reference to Defendants or to any of them is intended to be and shall be a reference to all Defendants hereto and to each of them named and unnamed including all factiously named Defendants unless said reference is otherwise specifically qualified.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1138(a) because federal questions are predicated on violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § § 1961-1968, *et. seq*. The RICO claims are predicated upon violations of 18 U.S.C. § § 1962 and 1964. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the non-federal question claims for breach of contract, fraud and conversion arose from the same nucleus of operative facts and thus are inextricably

RICO COMPLAINT

linked to and arise from the same core set of facts.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because Plaintiff maintains its business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district, and all monies due to Plaintiff from Defendants were due and payable in this judicial district.

## STATEMENTS OF FACTS COMMON TO ALL CLAIMS AGAINST DEFEDNDANT

12.     Starting sometime in 2019, Plaintiff Pontic retained Defendant Kyriacos Tsircou (Kyriacos) who operates as Defendant Tsircou Law PC ("TIPL") dba Tsircou Intellectual Property LA to prosecute a series of patents around the world for various inventions developed by Plaintiff Pontic who hoped to commercially exploit these patents through lucrative licensing agreements to be completed with either foreign corporations or foreign governments.

13.     In several instances the patents were granted. However, additional follow up was required with many of these granted patents depending on the patent laws of the foreign country in question. Thus, foreign law firms had to be retained to either complete the full patent application process or to maintain the patents with supplemental filings.

14.     For those patents that were not granted, follow-up work was also required. This work could not be carried out by the Tsircou Firm but required a foreign law firm serving as the point of contact.

15.     Thus, over the time frame of 2019-2023 Defendant Tsircou filed many patent applications and in each instance a foreign law firm had to be retained to facilitate the filing. A true and correct copy of the patents at issue in the foreign countries in which these patents were filed, their applications numbers, as well as the foreign law firms involved are attached hereto and incorporated herein as Exhibit 1.

RICO COMPLAINT

16.     Therefore, for the time frame of approximately May 2019 up through August 2023, Plaintiff Pontic relied on Tsircou to carry out these patent prosecution duties, whether it be replying to office actions of the various foreign countries or filing supplemental materials to ensure the granting of the patents or filing supplemental materials to maintain the patents.

17.     Accordingly, the patent applications shown in the chart of Exhibit "1" are in various stages all over the world. Some applications were not completed; some applications were completed but the patents were not granted because supplemental filings were not provided.

18.     Some patents were granted but follow up filings to maintain the patents were not timely filed. Thus, these patents were deemed expired or abandoned.

19.     Many of the applications prepared by TIPL were incomplete or the patents to be expired or otherwise cancelled because the Tsircou Law Firm failed to timely pay the various invoices for services rendered by the foreign law firms that were prosecuting the patents in various countries. See Exhibit 1 attached hereto.

20.     Plaintiff Pontic paid well over $200,000 to Defendant Tsircou to make sure that the foreign law firms were fully paid in their services and thus these foreign law firms would continuously provide ongoing services to ensure the prosecution and maintenance of Pontic's worldwide patent portfolio. However, instead of said funds being forwarded to the law firms, Defendant Kyriacos Tsircou kept the money for himself and spent it on personal expenses such as remodeling his home or buying his wife an expensive 5 karat diamond ring.

21.     The failure of Defendants to perform their contractual and fiduciary duties was discovered in October 2022 and into August 2023 after the various law firms started sending multiple emails to the Tsircou firm and some of these emails made their way to other attorneys within the firm who then forwarded these emails

RICO COMPLAINT

to Pontic in 2024.

22.    In addition, the Schlee IP International, P.C. (Schlee), another firm retained by Pontic to assist with IP portfolio management, made numerous phone calls between February of 2023 and August of 2023 imploring Defendant Tsircou to pay the various foreign law firms for their services. Schlee explained that failure to pay these foreign invoices would cause the foreign law firm to "stop work" thereby causing the patent applications in the foreign jurisdictions to expire, lapse, or be deemed abandoned.

23.    In addition, numerous phone calls were made to the Tsircou firm during 2022-2023, by the foreign law firms with voicemails left and again, payments were not remitted.

24.    Eventually, Pontic through the auspices of the Schlee firm, discovered that many of his patent applications had been declared abandoned or lost their enforceability. In some cases, the patents themselves were not kept in full force and declared expired.

25.    Accordingly, Plaintiff Ponic had to spend well over another $200,000 pursuing these patent applications again which in some cases meant having to start from scratch because some of the patent applications became deemed abandoned if granted, had expired, thus causing the inventions in these applications to be reclassified as prior art and therefore could not be timely revived.

26.    What makes this conduct even more outrageous is that Tsircou repeatedly assured Pontic, the Schlee Firm, and the foreign law firms around the world of forthcoming payment, plus repeatedly assured Pontic that matters were being handled and that there was nothing to worry about. These conversations repeatedly took place between February of 2023 through and including August of 2023.

27.    These conversations are documented in timelines and invoices as Pontic had to retain other counsel to start finding out how much of a mess had

RICO COMPLAINT

been created by the failure of Tsircou to carry out his contractual and fiduciary duties.

## FIRST CLAIM FOR RELIEF

[Breach of Written Contract]

AS AND FOR A FIRST CLAIM FOR RELIEF FOR BREACH OF WRITTEN CONTRACT AGAINST DEFENDANTS TIPL, AND KYRIACOS TSIRCOU AND DOES 1 THROUGH 10, PLAINTIFF ALLEGES:

28.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 27, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full herein.

29.    There existed a written contract between Plaintiff and Defendants, and each of them, the terms of which are set forth at Paragraphs 12 through 20, above and on Exhibit "2" attached hereto.

30.    Plaintiff has fulfilled all terms, conditions and covenants required by him under the written contract described hereinabove.

31.    Defendants have failed to perform the various material covenants, terms and conditions required of them under the written contracts as set forth hereinabove.  Thus, Defendants are in material breach of the written contract between the parties.

32.    As a result of Defendants' breach of the terms and conditions of the written contracts and invoices between Plaintiff and Defendants, and each of them, Plaintiff has been damaged in at least the sum of over Two Hundred Thousand Dollars ($200,000) or according to proof at the time of trial, together with interest thereon under California law accruing from August of 2023.

33.    Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time

frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

34.     Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

35.     Plaintiff has employed Trope and Trope Law Group, P.C., a duly licensed and registered California professional corporation to file and prosecute this action and has been obligated to pay said law corporation a fee for the services rendered by it to Plaintiff at the rate of $750 per hour pursuant to its Retainer Agreement.

**SECOND CLAIM FOR RELIEF**

[Breach of Oral Contract]

AS AND FOR A SECOND CLAIM FOR RELIEF FOR BREACH OF ORAL CONTRACT AGAINST DEFENDANTS TIPL, KYRIACOS TSIRCOU, MARIKA TSIRCOU AND DOES 1 THROUGH 10, PLAINTIFF ALLEGES:

36.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 34, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full herein.

37.     There existed oral contracts between Plaintiff and Defendants, and each of them, the terms of which are set forth at Paragraphs 12 through 20, above and memorialized in Exhibit "2" attached hereto.

38.     Plaintiff has performed all terms, conditions and covenants required by him under the oral contracts described hereinabove and memorialized in Exhibit

"2" attached hereto.

39.    Defendants have failed to perform the various material covenants, terms and conditions required of them as set forth hereinabove pursuant to the oral contracts (which are memorialized in Exhibits "2" hereto). Thus, Defendants are in material breach of the oral contracts between the parties.

40.    As a result of Defendants' breach of the terms and conditions of the oral agreements and invoices between Plaintiff and Defendants, and each of them, Plaintiff has been damaged in at least the sum of Two Hundred Thousand Dollars ($200,000) or according to proof at the time of trial together with interest thereon under California law accruing from and after the payment date set forth on each invoice attached hereto as Exhibit "2".

41.    Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

42.    Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

43.    Plaintiff has employed Trope and Trope Law Group, P.C., a duly licensed and registered California professional corporation to file and prosecute this action and has been obligated to pay said law corporation a fee for the services rendered by it to Plaintiff at the rate of $750 per hour pursuant to its Retainer

RICO COMPLAINT

Agreement.

## THIRD CLAIM FOR RELIEF

[Violations of the Racketeering Influence and Corrupt

Organizations Act ("RICO") 18 U.S.C. § § 1961 *et seq*. (wire fraud)]

AS FOR A THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE RACKETEERING INFLUENCE AND CORRUPT ORGANIZATIONS ACT ("RICO") (WIRE FRAUD) AGAINST DEFENDANTS KYRIACOS TSIRCOU AND MARIKA TSIRCOU, AND EACH OF THEM, PLAINTIFF ALLEGES:

44.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 43, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full herein.

45.    The relevant time period for Defendant Kyriacos Tsircou's pattern of racketeering stems from at least January of 2019, possibly earlier, through the present, but at this point in discovery is as yet unknown and continues to the filing of this RICO Complaint.

46.    Defendant Kyriacos Tsircou is now and was at all times relevant to this action the RICO Person ("RICO Person") within the meaning of 18 U.S.C. § § 1961(3) and 1962(c).

### RICO Enterprise

47.    The RICO Person (Defendant Kyriacos Tsircou) has used his law business TIPL as the "enterprise" within the meaning of 18 U.S.C. §§ 1961(4), to carry out the pattern of racketeering activity.  This enterprise consists of the RICO Person and the RICO business, namely TIPL. This enterprise possessed and continues to possess a common purpose and goal, a membership, organizational structure, and an ongoing relationship between the RICO Person and the RICO business with sufficient longevity to permit and enable pursuit of the enterprise's purpose and long-term objective through a continuous course of conduct that

RICO COMPLAINT

affected and continues to affect interstate commerce.

48.     In addition, the RICO Person, Defendant Kyriacos Tsircou, operates an "association-in-fact enterprise" within the meaning of 18 U.S.C. §§ 1961(4) to carry out the pattern of racketeering activity.  This "association-in-fact enterprise" is the RICO Family which consists of Defendant Kyriacos Tsircou and his wife, Defendant Marika Tsircou, to help and facilitate the violations alleged herein.

49.     This RICO Family enterprise possessed and continues to possess a common purpose and goal, a membership, organizational structure and an ongoing relationship between the RICO Person and those unnamed witnesses who helped facilitate the RICO Family's conduct for sufficient longevity to commit and enable pursuit of the RICO Family's enterprise's purpose and long-term objectives through a continuous course of conduct that affected and continues to affect interstate commerce.

50.     This association-in-fact enterprise of Defendants also consists of non-Defendants, as well as DOES 1 through 10, inclusive (the "RICO Family and Friends").  Plaintiff is informed and believes, and based upon such information and belief alleges, that all of the aforenamed individuals facilitated and assisted the RICO Person defined hereinabove, in carrying out the enterprise described hereinabove and herein below but their identities are not fully known to Plaintiff. Plaintiff will amend his Complaint to set forth their true names when same have been ascertained.

51.     Both the TIPL enterprise as well as the RICO Family enterprise exists separate and apart from Defendant Kyriacos Tsircou's pattern of racketeering activity and separate and apart from Defendant Marika Tsircou inasmuch as Defendant Kyriacos Tsircou and Defendant Marika Tsircou, as the RICO Person, along with TIPL, the RICO Business, the RICO Family and the RICO Family and Friends have multiple goals, not all of which are fraudulent or illegal.  The lawful activity engaged in by the enterprises includes functioning as a regular business

RICO COMPLAINT

providing legal services as well as functioning as a regular family.

52. However, the RICO Persons (Defendants Kyriacos Tsircou and Marika Tsircou), along with the RICO business (TIPL), as well as the RICO Family and the RICO Family and Friends have, since at least January of 2022, used these enterprises to conduct the repetitive acts of wire fraud which comprise the pattern of racketeering, as well as the continuous acts set forth herein above, which constitute repeated violations of criminal acts of wire fraud.

53. Defendant Kyriacos Tsircou is a "person" under the civil RICO statute because he knowingly and fraudulently masterminded, conducted and participated in the conduct, the management and the operation of the enterprise's affairs, directly or indirectly, through a pattern of wire fraud racketeering activity in violation of 18 U.S.C. § 1962(c).

54. Defendant Marika Tsircou is a "person" under the civil RICO statute because she knowingly and fraudulently masterminded, conducted and participated in the conduct, the management and the operation of the enterprise's affairs, directly or indirectly, through a pattern of wire fraud racketeering activity in violation of 18 U.S.C. § 1962(c).

55. As part of the wire fraud scheme, Defendants, at the direction of Defendants Kyriacos Tsircou and Marika Tsircou, in conjunction with the RICO Family, made repeated representations "that the funds owed to these foreign law firms would be paid."

56. At all relevant times, the Defendants and other conspirators associated with the business enterprise and the RICO Family enterprises conducted and participated, directly or indirectly, in the conduct of the enterprises' affairs through a "pattern of racketeering activity" within the meaning of the federal RICO statute, 18 U.S.C. § 1961(5), as well as in violation of RICO, 18 U.S.C. § 1962(e).

57. Specifically, at all relevant times, Defendant Kyriacos Tsircou and other conspiring Defendants engaged in "racketeering activity" within the meaning

RICO COMPLAINT

of 18 U.S.C. § 1961(1) by engaging in the acts set forth above against Plaintiff, all with the express purpose of avoiding payment of the outstanding amounts due to Plaintiff.

58.    In furtherance of this racketeering pattern, since January 1, 2023, Defendants caused monies that had been paid in trust to TIPL for payment to the foreign law firms to be transferred into bank accounts to which Plaintiff did not have access and used said funds to pay down the mortgage on the family residence located at 10 Sage Lane, Bell Canyon, California (the "Subject Real Property"), and/or cover expenses for the Subject Real Property, which property had been purchased in September of 2020 by Defendants Kyriacos Tsircou and Marika Tsircou.

59.    In addition, Defendants, as part of their racketeering activity caused monies to be paid to foreign law firms on behalf of Pontic to be transferred to bank accounts to which Plaintiff had no access and used said funds to pay for the extensive remodeling and repairs on the Subject Real Property; also, the funds were used to fund expensive trips to Sun Valley, Idaho (ski resort), Hawaii and Disneyland.  Defendants, also as part of their racketeering activity, used the monies that rightfully belonged to Plaintiff Pontic to buy Defendant Marika Tsircou a 5-carat diamond ring valued in excess of $200,000.

60.    Thus, the acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § 1956 and § 1957 (wire fraud, money laundering and theft/conversion).  Defendants and their accomplices and co-conspirators each committed and/or aided and abetted in the commission of two or more of these acts of racketeering activities.

61.    Defendants acts in furtherance of their wire fraud scheme to launder funds and convert same to their own use to avoid payment of the outstanding amounts due to Plaintiff constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are repetitive, related

RICO COMPLAINT

and continuous.

62.     Each predicate act described herein above had the same or similar purpose: the predicate acts involved material misrepresentations, omissions and concealment in a scheme to injure Plaintiff and defraud Plaintiff of the monies rightfully due to it pursuant to the terms and conditions of Exhibit "2" hereto. This pattern of racketeering is separate and distinct from the legitimate business activities of RICO enterprise known as TIPL as well as separate and apart from the legitimate activities of the RICO Family, namely Defendants Kyriacos Tsircou and Markia Tsircou.

63.     Furthermore, each one of these financial transactions constitutes a separate act of illegal conduct that qualifies for invocation of the RICO statute. *See, e.g., United States v. Prescott*, 42 F.3d 1165 (8th Cir. 1994); *United States v. Conley*, 826 F.Supp. 1536 (W.D.Pa. 1998).

64.     There is territorial jurisdiction for these violations as the transactions in question not only exceed $10,000, but also that the wire fraud was by a United States citizen and the conduct occurred in the United States.  *See* 18 U.S.C. § §1956(f), 1957(d).

65.     The acts of racketeering activity previously described constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1951(5).

66.     The acts alleged were related to each other by virtue of common participants, common victims and a common result of fraud and enriching the Defendants and conspirators at Plaintiff's expense while concealing the conspirators' fraudulent activities.  The wire fraud scheme continues and would have remained unknown but for Plaintiff having discovered the fraudulent activities of Defendant Kyriacos Tsircou and his wife, Defendant Marika Tsircou, when they posted photos of their expensive trips to various resorts as well as posting photos of Defendant Marika Tsircou's 5-carat diamond ring.

67.     To date, Plaintiff has been damaged in at least the sum of Five Million

RICO COMPLAINT

Dollars ($5,000,000) or according to proof at the time of trial plus prejudgment interest and attorneys' fees.

68.    Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

69.    Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

70.    Pursuant to RICO, 18 U.S.C. § 1964(c), Plaintiff is entitled to recover three-fold its damages, plus costs and attorneys' fees from the Defendants.

**FOURTH CLAIM FOR RELIEF**

[Violations of the Racketeering Influence and Corrupt Organizations Act ("RICO") 18 U.S.C. § § 1961 *et seq*. (conversion)]

AS AND FOR A FOURTH CLAIM FOR RELIEF FOR VIOLATIONS OF THE RACKETEERING INFLUENCE AND CORRUPT ORGANIZATIONS ACT ("RICO") (CONVERSION) AGAINST DEFENDANTS KYRIACOS TSIRCOU AND MARIKA TSIRCOU, AND EACH OF THEM, PLAINTIFF ALLEGES:

71.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 70, inclusive of his Complaint with the same force and effect as though set forth in full.

72.    The relevant time period for Defendants pattern of racketeering stems

RICO COMPLAINT

from at least January 2022 through the present, and possibly earlier, but at this point in discovery is as yet unknown and continues to the filing of this RICO Complaint. Defendants Kyriacou Tsircou and Marika Tsircou now are and were at all times relevant to this action the RICO Persons, ("RICO Persons") within the meaning of 18 U.S.C. § § 1961(3) and 1962(c).

73.    The RICO Person has used an association-in-fact "enterprise" within the meaning of 18 U.S.C. §§ 1961(4), to carry out the pattern of racketeering activity.  This enterprise consists of the RICO Persons and the RICO business (Defendant TIPL) and direct family members of Defendant Kyriacos Tsircou (the "Rico Family").

74.    This enterprise possessed and continues to possess a common purpose and goal, a membership, organizational structure, and an ongoing relationship amongst the RICO Person, the RICO business (which was incorporated by Defendant Kyriacos Tsircou in or about October 2006) and the RICO Family with sufficient longevity to permit and enable pursuit of the enterprise's purpose and long term objective through a continuous course of conduct that affected and continues to affect interstate commerce.

75.    This association-in-fact enterprise of Defendants also consists of non-Defendants DOES 1 through 10, inclusive (the "Rico Family and Friends"). Plaintiff is informed and believes, and based upon such information and belief alleges, that all of the afore-named individuals facilitated and assisted the RICO Person defined hereinabove, in carrying out the enterprise described hereinabove and hereinbelow, but their identities are as yet unknown to Plaintiff.  Plaintiff will amend his Complaint to set forth their true names when same have been ascertained.

76.    This enterprise exists separate and apart from Defendants' pattern of racketeering activity inasmuch as the RICO Persons, the RICO Business, the Rico Family and the Rico Family and Friends have multiple goals, not all of which are

fraudulent or illegal. The lawful activity engaged in by the TIPL enterprise includes functioning as a regular law firm providing legal services and the RICO family operates as a regular family.

77.   However, Defendants, the RICO business, the Rico Family and the Rico Family and Friends have, since at least February of 2020, used these enterprises to conduct the repetitive acts of conversion which compromise comprising the pattern of racketeering, as well as the continuous acts set forth herein above, which constitute violations of the criminal acts of conversion.

78.   Defendants Kyriacos Tsircou and Marika Tsircou "persons" under the civil RICO statute because they knowingly and fraudulently masterminded, conducted and participated in the conduct, the management and the operation of the enterprise's affairs, directly or indirectly, through a pattern of conversion racketeering activity in violation of 18 U.S.C. § 1962(c).

79.   As part of the conversion scheme, Defendants, at the direction of Defendant Kyriacos Tsircou, in conjunction with other conspirators, used a complex scheme to transfer funds which rightfully belonged to Pontic pursuant to the terms and conditions of Exhibit "2" hereto to other banks in the United States.

80.   At all relevant times, the Defendants and other conspirators associated with this enterprise conducted and participated, directly or indirectly, in the conduct of the enterprise affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(e).

81.   Specifically, at all relevant times, Defendant Kyriacos Tsircou and other conspiring Defendants engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above against Plaintiff, and other financial institutions in the marketplace all with the express purpose of avoiding payment of the outstanding amounts due to Plaintiff.

82.   In furtherance of this racketeering pattern, since January 2022, Defendants caused monies received from Plaintiff to be transferred into bank

RICO COMPLAINT

accounts to which Plaintiff did not have access and used said funds to pay down the mortgage and/or cover expenses for the subject real property, which property had been purchased in September of 2020 by Defendant Kyriacos Tsircou.

83.    In addition, Defendants, as part of their racketeering activity also took funds, paid by Pontic, to be remitted to foreign law firms to perform services for Pontic's foreign patent applications, out of the *TIPL bank account to which Pontic did not have access, and transferred those funds to other accounts in banks in the United States, and said funds were also used to pay the personal expenses of Defendant Kyriacos Tsircou and Defendant Marika Tsircou.*

84.    Thus, the acts set forth above constitute a violation of one or more of the following statutes:18 U.S.C. § 1956 and § 1957 (wire fraud, money laundering and theft/conversion).  Defendants and their accomplices and co-conspirators each committed and/or aided and abetted in the commission of two or more of these acts of racketeering activities.

85.    Defendant Kyriacos Tsircou's RICO conspirators' acts in furtherance of their money laundering scheme to launder funds and convert same to their own use to avoid payment of the outstanding amounts due to Plaintiff constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are repetitive, related and continuous.

86.    Each predicate act described herein above had the same or similar purpose: the predicate acts involved material misrepresentations, omissions and concealment in a scheme to injure Plaintiff and defraud Plaintiff of the monies rightfully due to him pursuant to the terms and conditions of Exhibit and "2" hereto. This pattern of racketeering is separate and distinct from the legitimate business activities of Defendant Kyriacos Tsircou.

87.    Defendants, indeed, have, through their misconduct described hereinabove violated 18 U.S.C. §1957, because these Defendants, or at the very least Defendants, conducted multiple monetary transactions that were criminal by

nature because the funds were legally to be held in trust for Plaintiff Pontic and remitted to foreign law firms performing services for the benefit of Plaintiff Pontic, pursuant to the terms and conditions of Exhibit "2" hereto and turned into cash and/or placed in bank accounts over which Plaintiff had no access, and that such property was in an amount greater than $10,000. See U.S.C. §1957(f)(1).

88.     These transactions included deposits, withdrawals, transfers, or exchanges, in or effecting interstate commerce, of funds or monetary instruments that by, or through, to a financial institution, including any transaction that would be defined as a transaction under 18 U.S.C. § §1956(c)(3) and 1956(c)(4).

89.     Furthermore, each one of these financial transactions constitutes a separate act unless there is a pattern of illegal conduct that qualifies for invocation of the RICO statute. *See*, e.g., *United States v. Prescott*, 42 Cap.F.3d 1165 (8th Cir. 1994); *United States v. Conley*, 826 F.Supp. 1536 (W.D.Pa. 1998).

90.     There is extra territorial jurisdiction for these violations as the transactions in question not only exceed $10,000, but also that the money laundering was by a United States citizen and the conduct occurred in the United States. *See* 18 U.S.C. § §1956(f), 1957(d).

91.     The acts of racketeering activity previously described constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1951(5).

92.     The acts alleged were related to each other by virtue of common participants, common victims and a common result of fraud and enriching the Defendants and conspirators at Plaintiff's expense while concealing the conspirators' fraudulent activities. The money laundering scheme continues and would have remained unknown but for Plaintiff having discovered the fraudulent activities when he attempted to obtain payment for his previously rendered services.

93.     To date, Plaintiff has been damaged in at least the sum of Two Hundred Thousand Dollars ($200,000) or according to proof at the time of trial plus prejudgment interest and attorneys' fees.

RICO COMPLAINT

94.    Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

95.    Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

96.    Pursuant to RICO, 18 U.S.C. § 1964(c), Plaintiff is entitled to recover three-fold its damages, plus costs and attorneys' fees from the Defendants.

**FIFTH CLAIM FOR RELIEF**

(Fraud and Deceit - Intentional Misrepresentation - Suppression of Fact)

AS AND FOR A FIFTH CLAIM FOR RELIEF FOR FRAUD AND DECEIT - INTENTIONAL MISREPRESENTATION - SUPPRESSION OF FACT, AGAINST ALL DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

97.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 96, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth herein.

98.    Plaintiff is informed and believes, and based upon such information and belief alleges, that commencing on June 1, 2019 and continuing through the present, Defendants, and each of them, through Defendants Kyriacos Tsircou and Marika Tsircou, falsely, fraudulently and intentionally made the representations

RICO COMPLAINT

telephonically and in writing via email and text as set forth in Paragraphs ___ through ___ hereinabove and as evidenced by Exhibits "1" through "2" hereto.

99. The representations made by Defendants, and each of them, were in fact false, fraudulent and intentional. The true facts were that Defendants, and each of them, through Defendants Kyriacos Tsircou and Marika Tsircou, knew, at the time they made the foregoing false and fraudulent representations that Defendants had no intention of paying the outstanding amounts due to the foreign law firms who were performing services for the benefit of Pontic and in truth and in fact it was a "scheme" orchestrated by Defendants to deprive Plaintiff of the monies to which it had entrusted to Defendants.

100. All of the false and fraudulent representations were made by Defendants, through Kyriacos Tsircou and Marika Tsircou, to induce Plaintiff into continuing to provide thousands of dollars so that Defendants, and each of them, could divert the funds received from Plaintiff to their own use and benefit.

101. When Defendants, and each of them, intentionally made these false and fraudulent representations they knew them to be false, and these false and fraudulent representations were made by Defendants, and each of them, with the intent to defraud and deceive Plaintiff, and with the intent to induce Plaintiffs to act in the manner herein alleged.

102. Plaintiff, at the time of these false and fraudulent representations intentionally made by Defendants, and each of them, and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true.

103. In justifiable reliance on these false and fraudulent representations, Plaintiff was induced to and did provide legal services. Had Plaintiff known the actual facts, it would never have continued to provide hundreds of hours of legal services. Plaintiff's reliance on Defendants' false and fraudulent representations was justified because Defendants had timely paid Plaintiff the monies due for

RICO COMPLAINT

previous invoices.

104.   As a proximate result of Defendants' fraud and deceit and the facts herein alleged, Plaintiff was deprived of the monies to which it was rightfully entitled, all to Plaintiff's damage in at least the sum of Two Hundred Thousand ($200,000.00) plus interest, plus costs according to proof and attorneys' fees according to proof but in at least the sum of $200,000.00, or in an amount to be determined at trial.

105.   Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

106.   Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

107.   The aforementioned conduct of Defendants, and each of them, was intentional misrepresentation, deceit or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of punitive and exemplary damages, as well as an award of attorneys' fees to the extent allowed by law.

/

RICO COMPLAINT

//

# SIXTH CLAIM FOR RELIEF

(Fraud and Deceit - Negligent Misrepresentation - Suppression of Fact)

AS AND FOR A SIXTH CLAIM FOR RELIEF FOR FRAUD AND DECEIT - NEGLIGENT MISREPRESENTATION - SUPPRESSION OF FACT, AGAINST ALL DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

108.   Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 107, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth herein.

109.   In order to state a claim for negligent misrepresentation, Plaintiff must plead: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) within intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Apollo Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 243 (2007).  "Negligent misrepresentation is a species of fraud or deceit specifically requiring an assertion." *Wilson v. Century* 21, 15 Cal.App.4th 298, 306 (1993).  Yet unlike an allegation of fraud, "negligent misrepresentation does not require knowledge of falsity." *Apollo*, 158 Cal.App.4th at 243.  Moreover, the Ninth Circuit has not yet decided whether the heightened pleading requirements under Rule 9 applied in negligent misrepresentation claims. *Petersen v. Allstate Indemnity Co*., 281 F.R.D. 413, 418-19 (C.D. Cal. 2012).

110.   In light of the fact that Plaintiff has stated and set forth a valid claim for fraud against the Defendants based on the facts alleged hereinabove, we ask the Court to also find that Plaintiff has stated a claim for negligent misrepresentation. *See Cisco Systems, Inc. v. Tsai*, 215 W.L. 1273249 at *5 (C.D. Cal. January 9, 2015) (confirming claim for negligent misrepresentation can be established by the same elements of fraud but without the knowledge element).

111.   Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

112.   Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

## SEVENTH CLAIM FOR RELIEF

### (Conversion)

AS AND FOR A SEVENTH CLAIM FOR RELIEF FOR CONVERSION AGAINST ALL DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

113.   Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 112, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth herein.

114.   From on or about **June 1, 2016** through the present, Plaintiff was and still is the owner of and entitled to possession of the $200,000.00 taken by Defendants.

115.   From on or about at least June 1, 2021 through the present, the above-mentioned property had a value of at least $200,000.00.

116.   From on or about at least June 1, 2021 through the present, Defendants, and each of them, took the above-mentioned property from Plaintiff

RICO COMPLAINT

and converted the same to their own use and benefit.

117.   From on or about August 2023 through the present, when Plaintiff first realized that Defendants, and each of them, had taken Plaintiff's monies/property and converted same to their own use and benefit, Plaintiff has repeatedly demanded, orally and in writing, that Defendants immediately turn over the above-mentioned property to Plaintiff but Defendants, and each of them, to date, have failed and refused and continue to fail and  refuse to do so.

118.   As a proximate result of Defendants' conversion, Plaintiff has been deprived of the use and benefit to be derived from the property converted, all to Plaintiff's damage in at least the sum of $200,000.00 or according to proof at the time of trial.

119.   Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

120.   Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

121.   Since Defendants, and each of them, knew that Plaintiff needed the aforesaid property, and that it would incur substantial hardship and expenses as a result of the conversion of the property belonging to Plaintiff by Defendants, and each of them, to themselves for their own use and benefit, the aforementioned

RICO COMPLAINT

conduct of Defendants, and each of them, was done with the intention on the part of the Defendants of depriving Plaintiff of its property and/or legal rights and otherwise causing injury and was despicable conduct that subjected Plaintiff to cruel and unjust hardships in conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damages.

## EIGHTH CLAIM FOR RELIEF

[Voidable Transaction – California Civil Code Section 3439.04(a)(1)]

AS AND FOR AN EIGHTH CLAIM FOR RELIEF TO SET ASIDE TRANSACTIONS MADE WITH ACTUAL INTENT TO HINDER, DELAY OR DEFRAUD A CREDITOR AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

122. Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 121, inclusive, of his Complaint with the same force and effect as though set forth in full.

123. As alleged herein, Plaintiff during the course of his relationship with Defendants, provided over $200,000 in trust deposits which were never paid to the foreign law firms despite repeated assurances from Defendants of payment. Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants transferred funds collected from clients of TIPL, and transferred said funds to the personal bank accounts of Defendants with said funds used to pay for:

a. mortgage payments on the principal residence located at 10 Sage Lane, Bell Canyon CA 91307 (the "Subject Real Property");

b. extensive remodeling to the Defendants' principal residence located at 10 Sage Lane, Bell Canyon CA 91307;

c. expensive family trips to Hawaii, Sun Valley, Idaho (high end ski-resort);

d. a 5-carat diamond ring;

124. There was no consideration received for the illegal transference of

these funds except for the purpose and with actual intent of hindering, delaying or defrauding Plaintiff in the collection of Plaintiff's claims against Defendants Kyriacos Tsircou and Marika Tsircou.

125.    Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants remain in possession or control of:

a.    the real estate described hereinabove;

b.    the 5-carat diamond ring; and

c.    such other funds not yet consumed by Defendants, with said funds rightfully belonging to Plaintiff Pontic.

126.    Plaintiff is informed and believes, and based upon such information and belief alleges, that the aforementioned transfer of the Monies received by and through Defendant TIPL, where Defendant Kyriacos Tsircou is the sole managing member, was made with actual intent to hinder, delay, or defraud Plaintiff in that the transfer of the Monies was to insiders, i.e., Defendants Kyriacos Tsircou and Marika Tsircou, his wife.

127.    Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants Kyriacos and Marika retained possession and/or control of the Monies transferred to Defendant TIPL in that most, if not all of the monies were used to:

a.    maintain and renovate the principal family residence located at 10 Sage Lane, Bell Canyon CA 91307 (the "Subject Real Property"), which is owned by Defendants Kyriacos Tsircou and Marika Tsircou;

b.    to pay for several family vacations to Hawaii, Disneyland, Sun Valley, Idaho;

c.    to purchase a 5 carat ring;

128.    The transfer of the Monies (which is believed to be in excess of $200,000) was never disclosed to Plaintiff.

129.    As a result of the foregoing, Plaintiff has been damaged in the sum of

RICO COMPLAINT

at least Two Hundred Thousand Dollars ($200,000).

130.    Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendant TIPL conduct as the transferor to Defendants Kyriacos Tsircou and Marika Tsircou conduct as the transferees of the Monies as alleged herein was a substantial factor in causing harm to Plaintiff as alleged herein.

131.    At all times mentioned herein, Defendants, and each of them, knew of Plaintiff's claims against Defendant TIPL, and Defendant Kyriacos Tsircou. Defendants, and each of them, knew that Plaintiff's claims could be satisfied by levy on the Monies converted by Defendants, and each of them. Notwithstanding this knowledge, Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff.

132.    Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

133.    Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

134.    The aforementioned conduct was made with the intention on the part of the Defendants named herein of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights,

RICO COMPLAINT

so as to justify an award of punitive and exemplary damages against Defendants, and each of them.

### NINTH CLAIM FOR RELIEF

(Voidable Transaction – California Civil Code Section 3439.04(a)(2))

AS AND FOR A NINTH CLAIM FOR RELIEF TO SET ASIDE A TRANSACTION MADE WITHOUT RECEIVING REASONABLY EQUIVALENT VALUE IN EXCHANGE FOR THE TRANSFER AS AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

135.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 134, inclusive, of his Complaint with the same force and effect as though set forth in full.

136.    As alleged herein, Plaintiff during the course of his relationship with Defendants, provided over $200,000 in trust deposits which were never forwarded to the foreign law firms who were performing services for Pontic, despite repeated assurances from Defendants of payment.  Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants transferred funds collected from clients of TIPL, and transferred said funds to the personal bank accounts of Defendants with said funds used to pay for:

a.    mortgage payments on the principal residence located at 10 Sage Lane, Bell Canyon CA 91307;

b.    extensive remodeling to the Defendants' principal residence located at 10 Sage Lane, Bell Canyon CA 91307;

c.    expensive family trips to Hawaii, Sun Valley, Idaho (high end ski-resort);

d.    a 5-carat diamond ring;

137.    There was no consideration received for the illegal transference of these funds except for the purpose and with actual intent of hindering, delaying or defrauding Plaintiff in the collection of Plaintiff's claims against Defendants

RICO COMPLAINT

Kyriacos Tsircou and Marika Tsircou.

138.    Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants remain in possession or control of:

a.    the real estate described hereinabove;

b.    the 5-carat diamond ring; and

c.    such other funds not yet consumed by Defendants, with said funds rightfully belonging to Plaintiff Pontic.

139.    Plaintiff is informed and believes, and based upon such information and belief alleges, that the aforementioned transfer of the Monies received by and through Defendant TIPL, where Defendant Kyriacos Tsircou is the sole managing member, was made with actual intent to hinder, delay, or defraud Plaintiff in that the transfer of the Monies was to insiders, i.e., Defendants Kyriacos Tsircou and Marika Tsircou, his wife.

140.    Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants Kyriacos and Marika retained possession and/or control of the Monies transferred to Defendant TIPL in that most, if not all of the monies were used to:

a.    maintain and renovate the principal family residence located at 10 Sage Lane, Bell Canyon CA 91307, which is owned by Defendants Kyriacos Tsircou and Marika Tsircou;

b.    to pay for several family vacations to Hawaii, Disneyland, Sun Valley, Idaho;

c.    to purchase a 5-carat ring;

141.    The transfer of the Monies (which is believed to be in excess of $200,000) was never disclosed to Plaintiff.

142.    As a result of the foregoing, Plaintiff has been damaged in the sum of at least Two Hundred Thousand Dollars ($200,000).

143.    Plaintiff is informed and believes, and based upon such information

RICO COMPLAINT

and belief alleges, that Defendant TIPL conduct as the transferor to Defendants Kyriacos Tsircou and Marika Tsircou conduct as the transferees of the Monies as alleged herein was a substantial factor in causing harm to Plaintiff as alleged herein.

144.    Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

145.    Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

146.    At all times mentioned herein, Defendants, and each of them, knew of Plaintiff's claims against Defendant TIPL, and Defendant Kyriacos Tsircou. Defendants, and each of them, knew that Plaintiff's claims could be satisfied by levy on the Monies converted by Defendants, and each of them.  Notwithstanding this knowledge, Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff.

147.    The aforementioned conduct was made with the intention on the part of the Defendants named herein of thereby depriving Plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of punitive and exemplary damages against Defendants, and each of them.

RICO COMPLAINT

/

# TENTH CLAIM FOR RELIEF

(Voidable Transaction – California Civil Code Section 3439.05)

AS AND FOR A TENTH CLAIM FOR RELIEF TO SET ASIDE A TRANSACTION MADE WITHOUT RECEIVING REASONABLY EQUIVALENT VALUE IN EXCHANGE FOR THE TRANSFER LEAVING THE DEBTOR INSOLVENT AS AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

148.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 147, inclusive, of his Complaint with the same force and effect as though set forth in full.

149.    As alleged herein, Plaintiff during the course of his relationship with Defendants, provided over $200,000 in trust deposits to be paid to foreign law firms providing services for Pontic. Despite repeated assurances from Defendants of payment, said payments were never forwarded.  Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants transferred funds collected from clients of TIPL, and transferred said funds to the personal bank accounts of Defendants with said funds used to pay for:

a.    mortgage payments on the principal residence located at 10 Sage Lane, Bell Canyon CA 91307;

b.    extensive remodeling to the Defendants' principal residence located at 10 Sage Lane, Bell Canyon CA 91307;

c.    expensive family trips to Hawaii, Sun Valley, Idaho (high end ski-resort) and Disneyland;

d.    a 5-carat diamond ring,

150.    There was no consideration received for the illegal transference of these funds except for the purpose and with actual intent of hindering, delaying or defrauding Plaintiff in the collection of Plaintiff's claims against Defendants

RICO COMPLAINT

Kyriacos Tsircou and Marika Tsircou.

151.    Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants remain in possession or control of:

    a.  the real estate described hereinabove;

    b.  the 5-carat diamond ring; and

    c.  such other funds not yet consumed by Defendants, with said funds rightfully belonging to Plaintiff Pontic.

152.    Plaintiff is informed and believes, and based upon such information and belief alleges, that the aforementioned transfer of the Monies received by and through Defendant TIPL, where Defendant Kyriacos Tsircou is the sole managing member, was made with actual intent to hinder, delay, or defraud Plaintiff in that the transfer of the Monies was to insiders, i.e., Defendants Kyriacos Tsircou and Marika Tsircou, his wife.

153.    Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants Kyriacos and Marika retained possession and/or control of the Monies transferred to Defendant TIPL in that most, if not all, of the monies were used to:

    a.  maintain and renovate the principal family residence located at 10 Sage Lane, Bell Canyon CA 91307, which is owned by Defendants Kyriacos Tsircou and Marika Tsircou;

    b.  to pay for several family vacations to Hawaii, Disneyland, Sun Valley, Idaho;

    c.  to purchase a 5-carat ring;

154.    The transfer of the Monies (which is believed to be in excess of $200,000) was never disclosed to Plaintiff.

155.    As a result of the foregoing, Plaintiff has been damaged in the sum of at least Two Hundred Thousand Dollars ($200,000).

156.    Plaintiff is informed and believes, and based upon such information

RICO COMPLAINT

and belief alleges, that Defendant TIPL conduct as the transferor to Defendants

Kyriacos Tsircou and Marika Tsircou conduct as the transferees of the Monies as

alleged herein was a substantial factor in causing harm to Plaintiff as alleged herein.

157.    Owing to the failure of Defendants to perform their contractual and

fiduciary duties described herein above, Plaintiff Pontic suffered significant

consequential damages. Pontic retained Defendants Tsircou and TIPL for the

purposes of registering these patents all over the world. During this same time

frame, Pontic commenced negotiations with various business entities and foreign

governments to license the technologies developed by Pontic that would be

protected by these patents.

158.    Owing to the failure of Defendants to perform their contractual and

fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract

negotiations with any of its foreign contacts concerning the technologies covered by

its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic

suffered consequential damages in excess of Five Million Dollars ($5,000,000), for

which Pontic has evidence to sustain this claim.

159.    At all times mentioned herein, Defendants, and each of them, knew of

Plaintiff's claims against Defendant TIPL, and Defendant Kyriacos Tsircou.

Defendants, and each of them, knew that Plaintiff's claims could be satisfied by

levy on the Monies converted by Defendants, and each of them.  Notwithstanding

this knowledge, Defendants, and each of them, intentionally, willfully, fraudulently,

and maliciously did the things herein alleged to defraud and oppress Plaintiff.

160.    The aforementioned conduct was made with the intention on the part

of the Defendants named herein of thereby depriving Plaintiff of property or legal

rights or otherwise causing injury, and was despicable conduct that subjected

Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights,

so as to justify an award of punitive and exemplary damages against Defendants,

and each of them.

### ELEVENTH CLAIM FOR RELIEF

(Unjust Enrichment and Imposition of Constructive Trust)

AS FOR AN ELEVENTH CLAIM FOR RELIEF BASED ON UNJUST ENRICHMENT AND IMPOSITION OF CONSTRUCTIVE TRUST AGAINST ALL DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

161.   Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 160, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth herein.

162.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, have received a benefit at Plaintiff's expense.

163.   As alleged herein, as a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been damaged in at least the sum of $200,000.00 or an amount to be proved at trial together with interest thereon.

164.   As further alleged herein, Defendants, and each of them, have enjoyed a benefit as alleged in this Complaint to the detriment of Plaintiff. Plaintiff is informed and believes and thereon alleges that the benefits conferred upon Defendants, and each of them, was the result of mistake, fraud or coercion, or request, thus making their enrichment unjust.

165.   Owing to the failure of Defendants to perform their contractual and fiduciary duties described herein above, Plaintiff Pontic suffered significant consequential damages. Pontic retained Defendants Tsircou and TIPL for the purposes of registering these patents all over the world. During this same time frame, Pontic commenced negotiations with various business entities and foreign governments to license the technologies developed by Pontic that would be protected by these patents.

166.   Owing to the failure of Defendants to perform their contractual and fiduciary duties, Plaintiff Pontic was unable to successfully conclude contract negotiations with any of its foreign contacts concerning the technologies covered by

RICO COMPLAINT

its patent portfolio that was entrusted to Defendants for prosecution. Thus, Pontic suffered consequential damages in excess of Five Million Dollars ($5,000,000), for which Pontic has evidence to sustain this claim.

167.    Accordingly, in order to protect the Plaintiff, pending the final resolution of this action, Plaintiff requests that the Court impose a Constructive Trust over a sufficient amount of Defendants' assets and resources in order to ensure that Plaintiff is made whole at the conclusion of this action.

WHEREFORE, Plaintiff prays for relief as follows:

**FOR THE FIRST CLAIM FOR RELIEF FOR BREACH OF WRITTEN CONTRACT AS TO DEFENDANTS, KYRIACOS TSIRCOU, AND MARIKA TSIRCOU AND DOES 1 THROUGH 10, INCLUSIVE:**

1.    For damages in at least the sum of Five Million Dollars ($5,000,000.00) or an amount to be proved at trial;

2.    For interest on the sum of $5,000,000.00 at the interest rate of 10% per annum from and after August 31, 2022; and

3.    For attorneys' fees in at least the sum of $75,000.00 or according to proof at the time of trial;

**FOR THE SECOND CLAIM FOR RELIEF FOR BREACH OF ORAL CONTRACT AS TO DEFENDANTS KYRIACOS TSIRCOU, MARIKA TSIRCOU AND DOES 1 THROUGH 10, INCLUSIVE:**

4.    For damages in at least the sum of Five Million Dollars ($5,000,000.00) or an amount to be proved at trial;

5.    For interest on the sum of $5,000,000.00 at the interest rate of 10% per annum from and after August 31, 2022; and

6.    For attorneys' fees in at least the sum of $75,000.00 or according to proof at the time of trial;

**FOR THE THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE RACKETEERING INFLUENCE AND CORRUPT ORGANIZATIONS**

RICO COMPLAINT

ACTION ("RICO") (WIRE FRAUD) AGAINST DEFENDANTS AND EACH OF THEM:

7.    For damages in at least the sum of Five Million Dollars ($5,000,000.00) or an amount to be proved at trial;

8.    For interest on the sum of $5,000,000.00 at the interest rate of 10% per annum from and after August 31, 2022;

9.    For treble damages as provided under the RICO statute in the amount of $15,000,000; and

10.    For attorneys' fees in at least the sum of $200,000.00 or according to proof at the time of trial;

**FOR THE FOURTH CLAIM FOR RELIEF FOR VIOLATIONS OF THE RACKETEERING INFLUENCE AND CORRUPT ORGANIZATIONS ACTION ("RICO") (CONVERSION) AGAINST DEFENDANTS AND EACH OF THEM:**

11.    For damages in at least the sum of Five Million Dollars ($5,000,000.00) or an amount to be proved at trial;

12.    For interest on the sum of $5,000,000.00 at the interest rate of 10% per annum from and after August 31, 2022; and

13.    For attorneys' fees in at least the sum of $200,000.00 or according to proof at the time of trial;

14.    For treble damages as provided under the RICO statute in the amount of $15,000,000; and

15.    For attorneys' fees to the extent permitted by law;

**FOR THE FIFTH CLAIM FOR RELIEF FOR FRAUD AND DECEIT - INTENTIONAL MISREPRESENTATION - SUPPRESSION OF FACT AGAINST DEFENDANTS, AND EACH OF THEM:**

16.    For damages in at least the sum of Five Million Dollars ($5,000,000.00) or an amount to be proved at trial;

RICO COMPLAINT

17.     For attorneys' fees in at least the sum of $5,000,000.00 or according to proof at the time of trial;

18.     For interest on the sum of $200,000.00 at the interest rate of 10% per annum from and after August 31, 2022; and

19.     For punitive and exemplary damages according to proof at the time of trial;

20.     For attorneys' fees to the extent permitted by law;

**FOR THE SIXTH CLAIM FOR RELIEF FOR FRAUD AND DECEIT - NEGLIGENT MISREPRESENTATION - SUPPRESSION OF FACT AGAINST DEFENDANTS, AND EACH OF THEM:**

21.     For damages in at least the sum of Two Hundred Thousand Dollars ($200,000.00), or in an amount to be proved at trial;

22.     For punitive and exemplary in an amount to be determined at trial;

**FOR THE SEVENTH CLAIM FOR RELIEF FOR CONVERSION AGAINST DEFENDANTS, AND EACH OF THEM:**

23.     For damages in at least the sum of Two Hundred Thousand Dollars ($200,000.00), or in an amount to be proved at trial;

24.     For punitive and exemplary damages according to proof at the time of trial;

**FOR THE EIGHTH CLAIM FOR RELIEF FOR VOIDABLE TRANSACTION – CALIFORNIA CIVIL CODE SECTION 3439.04(A)(1) AGAINST DEFENDANTS, AND EACH OF THEM**

25.     For damages in at least the sum of Two Hundred Thousand Dollars ($200,000.00), or in an amount to be proved at trial;

26.     For punitive and exemplary damages according to proof at the time of trial;

**FOR THE NINTH CLAIM FOR RELIEF FOR VOIDABLE TRANSACTION – CALIFORNIA CIVIL CODE SECTION 3439.04(a)(2)**

RICO COMPLAINT

**AGAINST DEFENDANTS, AND EACH OF THEM**

27.     For damages in at least the sum of Two Hundred Thousand Dollars ($200,000.00), or in an amount to be proved at trial;

28.     For punitive and exemplary damages according to proof at the time of trial;

**FOR THE TENTH CLAIM FOR RELIEF FOR VOIDABLE TRANSACTION – CALIFORNIA CIVIL CODE SECTION 3439.05 AGAINST DEFENDANTS, AND EACH OF THEM**

29.     For damages in at least the sum of Two Hundred Thousand Dollars ($200,000.00), or in an amount to be proved at trial;

30.     For punitive and exemplary damages according to proof at the time of trial;

**FOR THE ELEVENTH CLAIM FOR RELIEF FOR UNJUST ENRICHMENT AND IMPOSITION OF CONSTRUCTIVE TRUST AGAINST DEFENDANTS, AND EACH OF THEM:**

31.     For damages in at least the sum of Two Hundred Thousand Dollars ($200,000.00), or in an amount to be proved at trial;

32.     For imposition of a constructive trust over a sufficient amount of Defendants' assets and resources in order to ensure that Plaintiff is made whole at the conclusion of this action;

/
/ /
/ / /

**FOR ALL CLAIMS FOR RELIEF:**

33.     For costs of suit incurred herein; and

34.     For any such other and further relief as this Honorable Court deems just and proper.

DATED:  April 11, 2025 TROPE AND TROPE LAW GROUP, P.C.


_____
KONRAD L. TROPE,
ATTORNEYS FOR PLAINTIFF

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by a jury in the above-entitled action.


DATED:   April 11, 2025        TROPE AND TROPE LAW GROUP, P.C.


_____
KONRAD L. TROPE,
ATTORNEYS FOR PLAINTIFF

RICO COMPLAINT